# 15-1815

---

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

---

**UNITED STATES OF AMERICA,** *Appellee,*

**-v.-**

**ROSS WILLIAM ULBRICHT, AKA DREAD PIRATE ROBERTS, AKA
SILK ROAD, AKA SEALED DEFENDANT 1, AKA DPR,** *Defendant-Appellant.*

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

**BRIEF OF *AMICI CURIAE* THE DRUG POLICY ALLIANCE,
LAW ENFORCEMENT AGAINST PROHIBITION,
JUSTLEADERSHIPUSA, AND NANCY GERTNER IN SUPPORT OF
DEFENDANT-APPELLANT ARGUING REVERSAL**

---

TAMAR TODD
JOLENE FORMAN
DRUG POLICY ALLIANCE,
OFFICE OF LEGAL AFFAIRS
*Attorneys for Amici Curiae*
1330 Broadway, Suite 1426
Oakland, California 94612
510-679-2314
510-679-2316
ttodd@drugpolicy.org
jforman@drugpolicy.org

# TABLE OF CONTENTS

Page

*Amici* Corporate Disclosure Statement .......................................................x

*Amici* Statement of Identity, Interest, and Authority ...............................xi

ARGUMENT ...................................................................................................1

I. Introduction ...............................................................................................1

II. Mr. Ulbricht's life sentence violates the Eighth Amendment bar on cruel and unusual punishment.................................................................1

    A. *Lawmakers are turning away from ineffective harsh federal drug sentences* ......................................................................3

    B. *Life sentences are uncommon and inhumane by international standards*.................................................................................................4

    C. *Mr. Ulbricht's life sentence is an outlier for drug trafficking offenses*.................................................................................................5

III. The district court committed procedural and substantive error when it imposed an unreasonable life sentence ...............................................7

    A. *Mr. Ulbricht's life sentence is procedurally unreasonable because the district court erred by considering false information about drug overdoses in its sentencing determination* ...........................7

    B. *The district court unfairly considered unreliable and unproven evidence when sentencing Mr. Ulbricht to the upper limit of the Guidelines* ...................14

    C. *Mr. Ulbricht's life sentence is substantively unreasonable because the district court improperly relied on general deterrence theory in its sentencing decision* ...................................................15

        1. Mr. Ulbricht's Life Sentence is Shockingly High ...................16

2.  The district court improperly considered general deterrence theory when making its sentencing decision .......................................................17

    a.  The war on drugs has failed to deter drug use or other drug activity .................................................................................................18

    b.  Longer sentences are no more effective at deterring crime than shorter ones.................................................................................20

    c.  Mr. Ulbricht's arrest, conviction, and sentence have failed to deter the creation of Silk Road copycat websites ...............................21

CONCLUSION ..................................................................................................22

Certificate of Compliance ........................................................................24

# TABLE OF AUTHORITIES

Page

**U.S. Constitution**

Fifth Amendment ............................................................................7, 14
Sixth Amendment ..................................................................................14
Eighth Amendment .........................................................................1, 2, 3

**Cases**

*Apprendi v. New Jersey*, 530 U.S. 466 (2000).........................................14

*Ewing v. California*, 538 U.S. 11 (2003) ...................................................2

*Gall v. United States*, 552 U.S. 38, 51 (2007) ..........................................7

*Harmelin v. Michigan*, 501 U.S. 957 (1991) .............................................2

*McMillan v. Pennsylvania*, 477 U.S. 79 (1986)........................................14

*Roper v. Simmons*, 543 U.S. 551 (2005)................................................2, 3

*Solem v. Helm*, 463 U.S. 277 (1983)........................................................2

*Sullivan v. Louisiana*, 508 U.S. 275 (1993)..............................................14

*Trop v. Dulles*, 356 U.S. 86 (1958)...........................................................3

*United States v. Aldeen*, 792 F.3d 247 (2d Cir. 2015) .............................16

*United States v. Alexander*, 860 F.2d 508 (2d Cir.1988).........................8

*United States v. Broxmeyer*, 699 F.3d 265 (2d Cir. 2012)......................16

*United States v. Cavera*, 550 F.3d 180 (2d Cir.2008) ........................7, 16

*United States v. Copeland*, 902 F.2d 1046 (2d Cir. 1990).......................8

*United States v. Gaudin*, 515 U.S. 506 (1995) ......................................14

*United States v. Ingram*, 721 F.3d 35 (2d Cir. 2013) .........................................7, 16

*United States v. Prescott*, 920 F.2d 139 (2d Cir. 1990) .............................................8

*United States v. Pugliese*, 805 F.2d 1117 (2d Cir. 1986) .........................................8

*United States v. Rigas*, 490 F.3d 208 (2d Cir. 2007) ...............................................16

*United States v. Rigas*, 583 F.3d 108 (2d Cir. 2009) ...............................................16

*United States v. Romano*, 825 F.2d 725 (2d Cir.1987) .............................................8

*Williams v. New York*, 337 U.S. 241 (1949) ...........................................................8

*Winship, In re*, 397 U.S. 358 (1970) ......................................................................14

## **Other Authorities**

Akers, R. *Rational Choice, Deterrence, and Social Learning Theory in Criminology: The Path Not Taken*, 81 J. Crim. L. and Criminology 653 (1990-1991) .............................................................................................17

American Society of Addiction Medicine, *Opioid Addiction 2016 Facts & Figures* (2016) .................................................................................10

Bazazi, A. et al., *Preventing Opiate Overdose Deaths: Examining Objections to Take-Home Naloxone*, 21(4) J. Health Care for the Poor and Underserved 1108-1113 (2010) ...........................................................................................11

Castle, S., *Court Rules Against Britain in Life Terms for 3 Convicts*, N.Y. Times, July 9, 2013...........................................................................................4

Centers for Disease Control and Prevention, *Prescription Drug Overdose Data*, (Oct. 16, 2015)...........................................................................................9

Cox, J., *Dark Web Drug Markets Are Desperately Clinging to the Silk Road Brand*, Motherboard (Oct. 22, 2015, 8:30 AM) .............................................21

Dai, S, *A Chart That Says the War on Drugs Isn't Working*, The Wire (Oct. 12, 2012).............................................................................................20

Davidson, P. et al., *Witnessing heroin-related overdoses: the experiences of young injectors in San Francisco*, Addiction 97(12) (2002)........................12

Davis, C. et al., *Legal Interventions to Reduce Overdose Mortality: Naloxone Access and Overdose and Good Samaritan Laws*, The Network for Public Health Law (2016) ................................................................................11, 12

Drug Policy Alliance, *Opioid Overdose: Addressing the Growing Problem of Preventable Deaths*, (Feb. 2016) ...................................................................12

European Court of Human Rights, Factsheet – Life imprisonment (October 2015) ..........................................................................................4

Farivar, C., *Copycat site mourns Silk Road verdict, blames Ulbricht's bad opsec*, ars technica (Feb. 5, 2015, 10:33AM) ........................................21

Friedman, S. et al., *Drug Arrests and Injection Drug Deterrence*, 101(2) Am. J. Pub. Health 344, 347 (2011) .........................................................18

Gendreau, P. et al., *The Effects of Prison Sentences on Recidivism*, Office of the Solicitor General of Canada (1999) ..............................................18

Green, D. et al., *Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism Among Drug Offenders*, 48(2) Criminology 357 ...........................................................................18

Hawken, A. et al., *Managing Drug Involved Probationers with Swift and Certain Sanctions: Evaluating Hawaii's HOPE*, National Institute of Justice 29 (2012)...............................................................................................20

Horwitz, S., *Struggling to Fix a 'Broken' System*, Wash. Post, December 5, 2015 ....................................................................................4

Kennedy, K.C., *A Critical Appraisal of Criminal Deterrence Theory*, 88 Dick. L. Rev. 4 (1983-1984) ....................................................................17

Marshall, B. et al., *Reduction in overdose mortality after the opening of North America's first medically supervised safer injecting facility: a retrospective population-based study*, 377 The Lancet 9775, 1429-1437 (April 2011)...............................................................................11

Moore, D. et al., "Cryptopolitik and the Darknet," 58(1) *Survival* 7-38 (2016)........................................................................................................21

Nagin, D.S., *Criminal Deterrence Research at the Outset of the Twenty-First Century*, 43 Crime & Just. 1 (1998) ...............................................18

National Conference of State Legislatures, *Drug Overdose Immunity and Good Samaritan Laws*, (Nov. 24, 2015).........................................................11, 12

NCHS Health E-Stat, "Number and Age-Adjusted Rates of Drug-poisoning Deaths Involving Opioid Analgesics and Heroin: United States, 2000–2014" (2015).........................................................................10

Nellis, A. et al., *Life Goes On: The Historic Rise In Life Sentences In America*, The Sentencing Project (2013) ..................................................4, 5

Nellis, A. et al., *No Exit: The Expanding Use of Life Sentences in America*, The Sentencing Project (July 2009) ...............................................3

Ochoa, K. et al., *Overdosing among young injection drug users in San Francisco*, Addict Behav. 26(3), 453-60 (2001) ...........................................13

Onwudiwe, I.D. et al., *Deterrence Theory*, 1 Encyclopedia of Prisons and Correctional Facilities 233 (2005)...........................................17, 20

Paternoster, R. et al., "Perceptual Deterrence Theory," *The Oxford Handbook of Criminological Theory* 649 (Francis T. Cullen & Pamela Wilcox eds., 2013) .............................................................17

Peavy, K.M. et al., *"Hooked on" Prescription-Type Opiates Prior to Using Heroin: Results from a Survey of Syringe Exchange Clients*, J. Psychoactive Drugs 44(3), 259-65 (2012)...............................10

Perez, Evan, *Holder Endorses Shorter Sentences for Drug Offenders Now in Prison,* CNN, June 20, 2014...........................................................4

Pollini, R.A. et al., *Response to Overdose Among Injection Drug Users*, Am. J. Prev. Med. 31(3), 261-4 (2006) ....................................................................13

Pollini, R.A. et al., *Problematic use of prescription-type opioids prior to heroin use among young heroin injectors*, Subst. Abuse Rehabil. 2(1), 173-80 (Oct. 2011) ...................................................................10

Porter, E., *Numbers Tell of Failure in Drug War*, N.Y. Times, July 3, 2012 ............................................................................................20

Prisco, G., *Good-bye Silk Road 2.0, Welcome Silk Road 3.0* (Aug. 11, 2014) ......................................................................................21

Recoverybrands.com, *Drug Use in America vs. Europe in 10 Maps* (2015) ..................................................................................................20

Roeder, O. et al., *What Caused the Crime Decline?*, Brennan Center for Justice at NYU School of Law (2015) ...........................................19

Roeder, O., *The Imprisoner's Dilemma*, Politics (Feb. 12, 2015, 12:01 AM) .......................................................................19

Rudd, R. et al., *Increases in Drug and Opioid Overdose Deaths – United States, 2000-2014*, Morbidity and Mortality Weekly Rpt. 64(50), 1378  (Jan. 1, 2016)...........................................10, 11, 12

Schmitt, G. et al., *Life Sentences in the Federal System*, U.S. Sentencing Comm'n (February 2015) ...................................................................5, 6

Sentencing Reform and Corrections Act of 2015, S.2123, 114th Cong. (2015) .................................................................................4

SilkRoadDrugs.org, *University Helped FBI Take Down Silk Road 2.0* (2014)....................................................................................21

Sporer, K.A., *Acute Heroin Overdose*, Ann. Intern. Med. 130, 584-590 (1999).....................................................................................12

The Sentencing Project, *Fact Sheet: Trends in U.S. Corrections* (2015)................19

Tracy, M. et al., *Circumstances of witnessed drug overdose in New York City: implications for intervention*, Drug Alcohol Depend. 79(2), 181-90 Aug. 1, 2005) ...............................................................................13

Travis, J. et al., *The Growth of Incarceration in the United States: Exploring Causes and Consequences* 132 (2014) ..............................................17, 18, 19

U.S. Dep't of Just., Office of Just. Programs, Bureau of Just. Stat., NCJ 236096, *Prisons in 2010* (Dec. 2011, rev. 2/9/12) ....................................................19

U.S. Dep't of Just., Office of Just. Programs, Bureau of Just. Stat., NCJ 248470, Federal Justice Statistics, 2012-Statistical Tables (January 2015).................6

U.S. Dep't of Just., Office of Just. Programs, Bureau of Just. Stat., NCJ 249513, Correctional Populations in the United States, 2014 (January 2016) ............6

U.S. Dep't of Just., Office of Just. Programs, Bureau of Just. Stat., NCJ 217995, State Court Sentencing of Convicted Felons 2004-Statistical Tables (July 2007) ....................................................................................................6

U.S. Dep't of Just., Office of Just. Programs, Bureau of Just. Stat., Prisoners Series Statistical Tables ...............................................................19

U.S. Sentencing Comm'n, *Policy Profile: 2014 Reduction of Drug Sentences* (2015)........................................................................................................3

Volkow, N. et al., *Medication-Assisted Therapies – Tackling Opioid-Overdose Epidemic*, N. Engl. J. Med. (May 2014)......................................................11

Warner, M. et al., "Trends in Drug-poisoning Deaths Involving Opioid Analgesics and Heroin: United States, 1999–2012," *NCHS Health E-Stat* (2014) ...................................................................9, 10

Wright, V., *Deterrence in Criminal Justice, Evaluating Certainty vs. Severity of Punishment*, The Sentencing Project (Nov. 2010) ....................................18

## CORPORATE DISCLOSURE STATEMENT

In accordance with Fed. R. App. P. 26.1, *amici curiae* the Drug Policy Alliance, Law Enforcement Against Prohibition, JustLeadershipUSA, and Nancy Gertner hereby certify that:

1.    None of the *amici* has a parent corporation; and

2.    None of the *amici* is a publicly held corporation and no publicly held corporation owns ten percent or more of its stock.

Date:  March 16, 2016

               _____s/Tamar Todd_____
Tamar Todd
Drug Policy Alliance,
Office of Legal Affairs
*Counsel for Amici Curiae*

# STATEMENT OF IDENTITY,
# INTEREST, AND AUTHORITY

The **Drug Policy Alliance** ("DPA") is a 501(c)(3) nonprofit organization that leads the nation in promoting drug policies that are grounded in science, compassion, health, and human rights. The organization is governed by a board of directors who bring a wealth of public health, science, civil liberties, social justice and criminal justice experience to the drug policy reform movement. DPA's honorary board includes prominent figures from both the left and the right of the political spectrum who are renowned for their leadership in the fields of business, law, medicine, media and politics, nationally and internationally. DPA is actively involved in the legislative process and seeks to roll back the excesses of the drug war, block new, harmful initiatives, and promote sensible drug policy reforms.[*]

**Law Enforcement Against Prohibition** ("LEAP") is a 501(c)(3) nonprofit organization made up of current and former members of the law enforcement and criminal justice communities that seeks to educate the public, the media, and policy makers that the war on drugs has unequivocally failed to meet every one of its stated goals:  After more than 40 years of arresting, prosecuting, and

---

[*] Pursuant to Fed. R. App. P. 29(c)(5) and Rule 29.1 of this Court's Local Rules, Drug Policy Alliance certifies that (1) this brief was authored entirely by counsel for *amici curiae* and not by counsel for any party, in whole or part; (2) no party or counsel for any party contributed money to fund preparing or submitting this brief; and (3) apart from *amici curiae* and its counsel, no other person contributed money to fund preparing or submitting this brief.

imprisoning at ever-increasing levels, well over a trillion taxpayer dollars have

been spent and more than 39 million nonviolent drug offenders have been arrested

and imprisoned, causing prison overcrowding, crippling law enforcement's ability

to focus resources on violent offenders, and devastating individuals and their

families.

**JustLeadershipUSA** ("JLUSA") is a nonprofit national advocacy

organization dedicated to cutting the US correctional population in half by 2030.

JLUSA was formed by Glenn Martin, a national criminal justice reform advocate

who spent six years in New York State prisons. JLUSA organizes and supports

decarceration advocacy campaigns on the local, state, and federal levels; trains and

supports formerly incarcerated people to become strong and effective leaders; and

engages JLUSA members to help build support and raise awareness through

advocacy and activism.

**Nancy Gertner** was appointed to the judiciary for the United States District

Court for the District of Massachusetts in 1994. She retired in September 2011 and

became part of the faculty of the Harvard Law School teaching a number of

subjects including criminal law, criminal procedure, forensic science and

sentencing, as well as continuing to teach and write about women's issues around

the world. She has published many articles, and chapters on sentencing,

discrimination, and forensic evidence, women's rights, and the jury system. Judge

Gertner is a recipient of the 2008 Thurgood Marshall Award of the American Bar Association, in recognition of her contributions to advancing human rights and civil liberties, and of the 2014 Margaret Brent Women Lawyers of Achievement Award of the American Bar Association, in recognition of Gertner's advocacy, mentoring and achievements in the legal field.

Pursuant to Fed. R. App. P. 29(a), Drug Policy Alliance, as counsel for *amici curiae*, has sought and obtained consent of all parties to file this brief.

# ARGUMENT

## I.     Introduction

On February 4, 2015, Ross Ulbricht was convicted of seven counts and sentenced to life in prison without the possibility of parole. The charges against him allege that Mr. Ulbricht operated the Silk Road website on which individuals bought and sold controlled substances. Mr. Ulbricht is a young man, only 26 when Silk Road began, with no criminal history or prior trouble with the law. He received – short of a sentence of death – the harshest punishment our legal system allows. In this context, this sentence is so rare and so severe as to violate the Eighth Amendment's prohibition on cruel and unusual punishment. Additionally, in making the sentencing determination, the district court, erroneously relied on deterrence theory and improperly considered six alleged overdose deaths that cannot be properly attributed to Mr. Ulbricht. Because of the severity and disproportionality of Mr. Ulbricht's life without parole sentence and the sentencing judge's improper reliance on six alleged overdose deaths and deterrence theory, Mr. Ulbricht's sentence should be vacated and he should be remanded to another judge for resentencing.

## II.    Mr. Ulbricht's life sentence violates the Eighth Amendment bar on cruel and unusual punishment

Mr. Ulbricht was sentenced to spend the rest of his life in prison. Sentences of life in prison without the possibility of parole are qualitatively different and

intrinsically more severe than other types of punishment. A sentence of life without the possibility of parole stands along with a sentence of death in its severity, its finality, and its determination that no rehabilitation of the individual is possible so that the person must never rejoin society and must be incarcerated until he or she dies. The Eighth Amendment prohibits punishments which are excessive in retaliation to the moral culpability of the offender. *Roper v. Simmons*, 543 U.S. 551 (2005). In Mr. Ulbricht's case, a sentence of life without the possibility of parole is constitutionally prohibited as it is cruel and unusual and is a grossly disproportionate punishment to the non-violent drug offense for which Mr. Ulbricht was convicted.

The Eighth Amendment requires that criminal sentences are proportional to the offense committed. *Solem v. Helm*, 463 U.S. 277 (1983). In noncapital cases, the Supreme Court has held that the "Eighth Amendment does not require strict proportionality between crime and sentence [but] forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Ewing v. California*, 538 U.S. 11 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957 (1991) (KENNEDY, J., concurring in part and concurring in judgment) (internal quotes omitted)). When determining whether a punishment is so disproportionate as to violate the Eighth Amendment, an appellate court must refer to "evolving standards of decency that

mark the progress of a maturing society." *Roper v. Simmons*, 543 U.S. 551, 561

(2005) (quoting *Trop v. Dulles*, 356 U.S. 86, 100–101 (1958) (plurality opinion).

The life sentence given to Mr. Ulbricht violates the Eighth Amendment

because life without the possibility of parole sentences for non-violent drug

offenses are inconsistent with contemporary standards of decency.[1]

A. ***Lawmakers are turning away from ineffective harsh federal drug sentences***

After decades of harsh federal sentencing guidelines for drug offenses that

have not resulted in positive public policy impacts – such as reduced drug use or

drug related activity – and high costs borne by society and individuals, lawmakers

are moving to reform harsh sentences for federal drug convictions like Mr.

Ulbricht's. For example, the United States Sentencing Commission, with support

from Democrats and Republicans in Congress, "voted unanimously to reduce

sentencing guidelines for most federal drug trafficking offenses."[2] This change,

which took effect in November of 2014, reduced most sentences for drug

trafficking convictions by an average of 11 months.[3] Similarly, the Obama

administration pushed for "smart on crime" federal sentencing reform aimed at

---

[1] Ashley Nellis & Ryan King, *No Exit: The Expanding Use of Life Sentences in America*, The Sentencing Project (July 2009), *available at* http://sentencingproject.org/doc/publications/publications/inc_NoExitSept2009.pdf.
[2] *Policy Profile: 2014 Reduction of Drug Sentences*, United States Sentencing Comm'n (2015), *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/backgrounders/profile_2014_drug_amendment.pdf.
[3] *Id.*

ending harsh sentences, except in the most egregious cases.[4] And, last year, a

bipartisan sentencing reform bill was introduced in Congress.[5]

### B. *Life sentences are uncommon and inhumane by international standards*

Outside of the United States many countries, including many of our allies in

Europe, do not have life in prison without parole or "whole life sentences" for any

offense.[6] The countries that do have whole life sentences use them sparingly.[7] In

fact, the European Convention on Human Rights and the European Court of

Human Rights have found whole life sentences to be inhumane.[8] Instead,

"[n]umerous international and comparative law materials demonstrate consistent

support for life sentences that allow parole review after 25 years" rather than life

without parole sentences.[9]

---

[4] *See, e.g.*, Sari Horwitz, *Struggling to Fix a 'Broken' System*, Wash. Post, December 5, 2015, at A1; Evan Perez, *Holder Endorses Shorter Sentences for Drug Offenders Now in Prison,* CNN, June 20, 2014, *available at* http://www.cnn.com/2014/06/10/justice/holder-prison-sentences.
[5] Sentencing Reform and Corrections Act of 2015, S.2123, 114th Cong. (2015).
[6] Ashley Nellis & Jean Chung, *Life Goes On: The Historic Rise In Life Sentences In America*, The Sentencing Project (2013), *available at*
http://sentencingproject.org/doc/publications/inc_Life%20Goes%20On%202013.pdf.
[7] *Id.*
[8] European Court of Human Rights, Factsheet – Life imprisonment (October 2015), *available at* http://www.echr.coe.int/Documents/FS_Life_sentences_ENG.pdf; Ashley Nellis & Jean Chung, *Life Goes On: The Historic Rise In Life Sentences In America*, The Sentencing Project (2013), *available at*
http://sentencingproject.org/doc/publications/inc_Life%20Goes%20On%202013.pdf; Stephen Castle, *Court Rules Against Britain in Life Terms for 3 Convicts*, N.Y. Times, July 9, 2013, *available at* http://www.nytimes.com/2013/07/10/world/europe/10iht-britain10.html?smid=tw-share.
[9] Ashley Nellis & Jean Chung, *Life Goes On: The Historic Rise In Life Sentences In America*, The Sentencing Project (2013), *available at*
http://sentencingproject.org/doc/publications/inc_Life%20Goes%20On%202013.pdf at 16-7.

### C. Mr. Ulbricht's life sentence is an outlier for drug trafficking offenses

Life sentences are exceedingly rare in the federal criminal justice system, particularly for individuals, like Mr. Ulbricht, with no prior criminal record.[10] "Virtually all offenders convicted of a federal crime are released from prison eventually and return to society."[11] This is particularly true for people convicted of drug offenses, including drug trafficking. In 2013, life sentences were "imposed in less than one-third of one percent of all drug trafficking cases."[12] Nationally, only two percent of all persons sentenced to life in prison were convicted of drug offenses.[13] Life sentences are typically reserved for persons who committed violent crimes. As of 2013, over 90 percent of all life sentences in the United States were imposed on persons convicted of murder, sexual assault, rape, aggravated assault, robbery, or kidnapping.[14]

In addition, typical sentences for drug convictions are significantly shorter than the life term imposed on Mr. Ulbricht. According to the Bureau of Justice

---

[10] Glenn R. Schmitt & Hyun J. Konfrst, *Life Sentences in the Federal System*, United States Sentencing Commission (February 2015), *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/miscellaneous/20150226_Life_Sentences.pdf.
[11] *Id.*
[12] *Id.*
[13] Ashley Nellis & Jean Chung, *Life Goes On: The Historic Rise In Life Sentences In America*, The Sentencing Project (2013), *available at* http://sentencingproject.org/doc/publications/inc_Life%20Goes%20On%202013.pdf at 7.
[14] *Id.*

Statistics, the typical sentence for a federal drug conviction is 75.5 months, or 6.3 years, in prison.[15] In state prisons and jails – which control almost 90 percent of the total United States incarcerated population[16] – the average drug trafficking sentence is only 60 months, or five years.[17]

Mr. Ulbricht's sentence was also rare because few federal defendants are sentenced to life terms when shorter terms are available under the sentencing guidelines. Only 17 out of 153 people, or nine percent, of individuals sentenced to life in the federal system in 2013, were convicted of crimes for which the sentencing guidelines offered a minimum term that was shorter than life in prison.[18] Meaning that 91 percent of people sentenced to life in federal prison were sentenced under the guideline minimum.[19]

---

[15] U.S. Dep't of Just., Office of Just. Programs, Bureau of Just. Stat., NCJ 248470, Federal Justice Statistics, 2012-Statistical Tables (January 2015) at 24, *available at* http://www.bjs.gov/content/pub/pdf/fjs12st.pdf.

[16] U.S. Dep't of Just., Office of Just. Programs, Bureau of Just. Stat., NCJ 249513, Correctional Populations in the United States, 2014 (January 2016) at 22, *available at* http://www.bjs.gov/content/pub/pdf/cpus14.pdf.

[17] U.S. Dep't of Just., Office of Just. Programs, Bureau of Just. Stat., NCJ 217995, State Court Sentencing of Convicted Felons 2004-Statistical Tables (July 2007), *available at* http://www.bjs.gov/content/pub/html/scscf04/scscf04_toc.cfm.

[18] Glenn R. Schmitt & Hyun J. Konfrst, *Life Sentences in the Federal System*, United States Sentencing Commission (February 2015), *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/miscellaneous/20150226_Life_Sentences.pdf.

[19] *Id.*

Thus, Mr. Ulbricht's non-mandatory sentence is grossly disproportionate to his crime, because it is outside current standards of decency and far harsher than typical sentences for drug trafficking.

## III.   The district court committed procedural and substantive error when it imposed an unreasonable life sentence

An appellate court may review a sentence imposed by a district court under a "deferential abuse-of-discretion standard." *United States v. Ingram*, 721 F.3d 35, 37 (2d Cir. 2013) (quoting *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc)). "This form of appellate scrutiny encompasses two components: procedural review and substantive review." *Id*. An appellate court should first review a sentence for procedural error. *Gall v. U.S.*, 552 U.S. 38, 51 (2007). Even if the district court's sentencing procedure is determined to be procedurally sound, then the appellate court should consider whether the sentence is substantially reasonable. *Id*.

### A. *Mr. Ulbricht's life sentence is procedurally unreasonable because the district court erred by considering false information about drug overdoses in its sentencing determination*

Mr. Ulbricht argued that his Fifth Amendment right to Due Process was violated when the district court erroneously included unreliable and inaccurate information about six alleged overdose deaths as a factor at sentencing. Additionally, the district court improperly relied on overdose death information when making its sentencing decision, because it is impossible to demonstrate that

7

the overdose deaths were connected to or primarily caused by drugs purchased on Silk Road.

A district court is not restricted "with respect to the type of information it may consider for purposes of sentencing." *United States v. Copeland*, 902 F.2d 1046, 1050 (2d Cir. 1990) (*citing Williams v. New York*, 337 U.S. 241, 246 (1949)); *United States v. Alexander*, 860 F.2d 508, 512-13 (2d Cir.1988); *United States v. Romano*, 825 F.2d 725, 728 (2d Cir.1987). A defendant, however, has a due process right to respond to the information considered by the district court. *Id.*; *see also United States v. Pugliese*, 805 F.2d 1117, 1122 (2d Cir. 1986) ("[A] defendant has a due process right to question the procedure leading to the imposition of his sentence."), *cert. denied*, 489 U.S. 1067 (1989). To ensure this right, a district court has an obligation "to assure itself that the information upon which it relies when fixing sentence is reliable and accurate." *United States v. Prescott*, 920 F.2d 139, 143 (2d Cir. 1990) (citing *Pugliese*, 805 F.2d at 1122).

At Mr. Ulbricht's sentencing, the district court allowed into evidence information about six overdose deaths that were allegedly connected to drugs purchased on Silk Road. A1476. Mr. Ulbricht opposed consideration of the overdose deaths and submitted a report by defense expert Mark L. Taff, M.D., concluding that the information was insufficient to demonstrate a direct link

between drug purchases from Silk Road and the deaths. A 904. The government provided no rebuttal to Dr. Taff's report.

*Amici* agree that the supposed association between the six overdose deaths and Silk Road is specious. The actual causes of overdose are incredibly complex. Nearly 47,000 Americans died from a drug overdose in 2014 – more than from gunshot wounds or car crashes – making overdoses the leading cause of accidental death in the United States.[20] Yet many of these deaths are a result of societal failings rather than the drug use alone. Lives could have been spared if better legal and public health protections were in place, including: 1) limits on prescriptions for opioid pain relievers; 2) increased access to substance abuse disorder treatment, including Medication-Assisted Treatment; 3) expanded access to and training for administering naloxone, a drug used to reverse opioid overdose; 4) ensured access to integrated prevention services, including access to sterile injection equipment and supervised injection facilities; and 5) the establishment of Good Samaritan or 911 drug immunity laws which encourage people experiencing overdose and those at the scene of an overdose to seek medical help.

---

[20] *Prescription Drug Overdose Data*, Centers for Disease Control and Prevention (Oct. 16, 2015), http://www.cdc.gov/drugoverdose/data/overdose.html; *Opioid Addiction 2016 Facts & Figures*, American Society of Addiction Medicine (2016), http://www.asam.org/docs/default-source/advocacy/opioid-addiction-disease-facts-figures.pdf.

Nationally, more overdose deaths are caused by prescription drugs than all illegal drugs combined.[21] Opioid addiction is driving the overdose epidemic in the United States.[22] This is largely the result of opioid prescriptions quadrupling in number of since 1999.[23] In response, many states have taken efforts to reduce access to prescription opioids. As this has happened, studies indicate that opioid-dependent individuals have switched from prescription painkillers to heroin, which is relatively less expensive and easier to access.[24] Thus, many heroin overdose deaths could be prevented if safer prescribing techniques are used for opiate drugs

---

[21] Margaret Warner, Holly Hedegaard, & Chen Li Hui, "Trends in Drug-poisoning Deaths Involving Opioid Analgesics and Heroin: United States, 1999–2012," *NCHS Health E-Stat* (2014), *available at* http://www.cdc.gov/nchs/data/hestat/drug_poisoning/drug_poisoning_deaths_1999-2012.pdf.

[22] "Number and Age-Adjusted Rates of Drug-poisoning Deaths Involving Opioid Analgesics and Heroin: United States, 2000–2014," *NCHS Health E-Stat* (2015), *available at* http://www.cdc.gov/nchs/data/health_policy/AADR_drug_poisoning_involving_OA_Heroin_US_2000-2014.pdf.

[23] Rose A. Rudd e al., *Increases in Drug and Opioid Overdose Deaths – United States, 2000-2014*, Morbidity and Mortality Weekly Rpt. 64(50), 1378 (Jan. 1, 2016), *available at* http://www.cdc.gov/mmwr/preview/mmwrhtml/mm6450a3.htm.

[24] Margaret Warner et al., "Trends in Drug-poisoning Deaths Involving Opioid Analgesics and Heroin: United States, 1999–2012," *NCHS Health E-Stat* (2014), *available at* http://www.cdc.gov/nchs/data/hestat/drug_poisoning/drug_poisoning_deaths_1999-2012.pdf.; K. Michelle Peavy et al., *"Hooked on" Prescription-Type Opiates Prior to Using Heroin: Results from a Survey of Syringe Exchange Clients*, J. Psychoactive Drugs 44(3), 259-65 (2012); R. A. Pollini et al., *Problematic use of prescription-type opioids prior to heroin use among young heroin injectors*, Subst. Abuse Rehabil. 2(1), 173-80 (Oct. 2011) ("Prior dependence on prescription opioids is the leading risk factor for heroin initiation, use and potential misuse."); Rose A. Rudd et al., *Increases in Drug and Opioid Overdose Deaths – United States, 2000-2014*, Morbidity and Mortality Weekly Rpt. 64(50), 1378-82 (Jan. 1, 2016), *available at* http://www.cdc.gov/mmwr/preview/mmwrhtml/mm6450a3.htm; *Opioid Addiction 2016 Facts & Figures*, American Society of Addiction Medicine (2016), http://www.asam.org/docs/default-source/advocacy/opioid-addiction-disease-facts-figures.pdf, ("Four in five new heroin users started out misusing prescription painkillers.").

consistent with recommendations issued by the Centers for Disease Control and Prevention.[25]

Studies show that for persons already dependent on opioids or other drugs, several public health interventions can prevent fatal drug overdoses. These include increased access to substance use treatment, integrated prevention services, and naloxone are prevent overdose.[26] Substance use treatment, including Medication-Assisted Treatment for opioid dependency, has been demonstrated to be a safe and effective method of reducing the risk of overdose.[27] Similarly, integrated prevention services, like syringe exchange programs and supervised injection facilities, have been effective at preventing overdoses directly through safer drug use education and indirectly by helping participants access substance use treatment.[28] Naloxone access is an essential tool for preventing overdoses from

---

[25] *See* Rose A.Rudd et al., *Increases in Drug and Opioid Overdose Deaths – United States, 2000-2014*, Morbidity and Mortality Weekly Rpt. 64(50), 1378-82 (Jan. 1, 2016), *available at* http://www.cdc.gov/mmwr/preview/mmwrhtml/mm6450a3.htm.

[26] *Id*.

[27] *See id*; Nora D. Volkow et al., *Medication-Assisted Therapies – Tackling Opioid-Overdose Epidemic*, N. Engl. J. Med. (May 2014), *available at* http://idhdp.com/media/362598/nejm-%E2%80%94.pdf.

[28] *See, e.g.*, Brandon D.L. Marshall et al., *Reduction in overdose mortality after the opening of North America's first medically supervised safer injecting facility: a retrospective population-based study*, 377 The Lancet 9775, 1429-1437 (April 2011), *available at* http://www.communityinsite.ca/injfacility.pdf; Rose A. Rudd et al., *Increases in Drug and Opioid Overdose Deaths – United States, 2000-2014*, Morbidity and Mortality Weekly Rpt. 64(50), 1378-82 (Jan. 1, 2016), *available at* http://www.cdc.gov/mmwr/preview/mmwrhtml/mm6450a3.htm, (increased access to naloxone is essential for preventing overdose deaths); Corey Davis et al., *Legal Interventions to Reduce Overdose Mortality: Naloxone Access and Overdose and Good Samaritan Laws*, The Network for Public Health Law (2016), https://www.networkforphl.org/_asset/qz5pvn/network-naloxone-

becoming fatal. Naloxone is a FDA approved drug with no potential for abuse.[29] It is designed to counteract the deadly effects of an opioid overdose and can be easily administered by non-medical persons, such as family and friends of the overdose victim.[30]

In addition to public health safeguards, legal protections can also dramatically reduce incidents of fatal overdose. Good Samaritan or 911 drug immunity laws must be in place, and the public must be educated about the protections they provide in order for overdose witnesses to seek emergency medical interventions without fear of legal repercussions. Most overdose deaths occur one to three hours after the victim has initially ingested or injected drugs.[31]

---

10-4.pdf; *Drug Overdose Immunity and Good Samaritan Laws*, National Conference of State Legislatures (Nov. 24, 2015), http://www.ncsl.org/research/civil-and-criminal-justice/drug-overdose-immunity-good-samaritan-laws.aspx.

[29] *See* Alexander R. Bazazi, Nickolas D. Zaller, Jeannina J. Fu & Josiah D. Rich, *Preventing Opiate Overdose Deaths: Examining Objections to Take-Home Naloxone*, 21(4) J. Health Care for the Poor and Underserved 1108-1113 (2010), *available at* http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3008773/; *Drug Overdose Immunity and Good Samaritan Laws*, National Conference of State Legislatures (Nov. 24, 2015), http://www.ncsl.org/research/civil-and-criminal-justice/drug-overdose-immunity-good-samaritan-laws.aspx; Corey Davis et al., *Legal Interventions to Reduce Overdose Mortality: Naloxone Access and Overdose and Good Samaritan Laws*, The Network for Public Health Law (2016), https://www.networkforphl.org/_asset/qz5pvn/network-naloxone-10-4.pdf; Rose A. Rudd et al., *Increases in Drug and Opioid Overdose Deaths – United States, 2000-2014*, Morbidity and Mortality Weekly Rpt. 64(50) 1378-82 (Jan. 1, 2016), *available at* http://www.cdc.gov/mmwr/preview/mmwrhtml/mm6450a3.

[30] *Id*.

[31] Karl A. Sporer, *Acute Heroin Overdose*, Ann. Intern. Med. 130, 584-590 (1999), *available at* http://moravek.org/ovisnosti/annintmed-01.htm; *Opioid Overdose: Addressing the Growing Problem of Preventable Deaths*, Drug Policy Alliance (Feb. 2016), *available at* http://www.drugpolicy.org/sites/default/files/DPA%20Fact%20Sheet_%20Opioid%20Overdose%20-%20Addressing%20a%20National%20Problem%20%28Feb.%202016%29.pdf; Peter J.

The chance of surviving an overdose, like that of surviving a heart attack, depends greatly on how fast one receives medical assistance. But unlike witnesses to heart attacks, who rarely think twice about calling 911, witnesses to an overdose often hesitate to call for help out of fear of other police involvement.[32] Without these legal protections in place, witnesses fear prosecution for use or possession of an illicit substance and do not call for emergency medical treatment which could otherwise save the life of an overdose victim. Harshly punishing drug offenders does just the opposite by discouraging people from seeking help for fear of prosecution and a lengthy prison sentence.

Because fatal overdoses are primarily the result of a multitude of complex medical and public policy failings, and not drug use alone or the provision of a drug alone, Mr. Ulbricht should not be held responsible for the alleged overdose deaths. In considering the overdose death information in its sentencing decision, the district court violated Mr. Ulbricht's due process rights and committed procedural error when it imposed a life sentence.

---

Davidson et al., *Witnessing heroin-related overdoses: the experiences of young injectors in San Francisco*, Addiction 97(12) (2002).

[32] *Id*; K.C. Ochoa et al., *Overdosing among young injection drug users in San Francisco*, Addict Behav. 26(3), 453-60 (2001); Robin A. Pollini et al., *Response to Overdose Among Injection Drug Users*, Am. J. Prev. Med. 31(3), 261-4 (2006); M. Tracy et al., *Circumstances of witnessed drug overdose in New York City: implications for intervention*, Drug Alcohol Depend. 79(2), 181-90 (Aug. 1, 2005).

**B. The district court unfairly considered unreliable and unproven evidence when sentencing Mr. Ulbricht to the upper limit of the Guidelines**

Not only were the overdose deaths improperly attributed to Mr. Ulbricht, but the district court's use of these and other unproven facts as bases for imposing a life sentence raises an issue of fundamental fairness.

Under the Fifth and Six Amendments, a criminal defendant is entitled to be notified of all charges against him and to a jury determination that he is guilty beyond reasonable doubt of every element of a crime. *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000) (citing *United States v. Gaudin*, 515 U.S. 506, 510 (1995); *Sullivan v. Louisiana*, 508 U.S. 275, 278 (1993); *In re Winship*, 397 U.S. 358, 364 (1970) ("[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.")). The Supreme Court has held in *Apprendi*, and *McMillan* before it, that a court should not base sentencing on uncharged conduct that has not been proved to a jury. *McMillan v. Pennsylvania*, 477 U.S. 79, 88 (1986) (finding based on a mere preponderance of the evidence shall not be the "tail which wags the dog of the substantive offense."); *Apprendi*, 530 U.S. at 495. *Apprendi* and its progeny are intended to further the principle that facts must be tested by juries before a judge considers them in a

sentencing determination; otherwise a sentence may be improperly enhanced based on unreliable evidence.

Here, the district court included uncharged, unadjudicated, and ultimately unsubstantiated conduct about overdose deaths and murders for hire in its rationale for sentencing Mr. Ulbricht to life without parole. These facts were not evaluated by the jury, let alone proved to the jury beyond a reasonable doubt. In addition, defense expert Dr. Taff advised the court that the evidence connecting Mr. Ulbricht to the overdose deaths was weak at best. Thus, the uncharged facts should not have been used as a rationale for sentencing Mr. Ulbricht to the upper limit of the Guidelines range and doing so defies the Due Process Clause.

### C. Mr. Ulbricht's life sentence is substantively unreasonable because the district court improperly relied on general deterrence theory in its sentencing decision

Mr. Ulbricht argued that his sentence is substantively unreasonable, in part because the district court relied on the general deterrence theory when making its sentencing decision. *Amici* agree that the district court improperly relied on general deterrence theory, because there is no evidence that long sentences have a general deterrent effect and, even if they did, life sentences specifically have not been demonstrated to more effectively deter crime than shorter than life sentences.

When reviewing a sentence for substantive reasonableness, an appellate court will set aside a sentence only in "exceptional cases" where the district court's

determination "cannot be located within the range of permissible decisions."

*Ingram*, 721 F.3d at 37 (2d Cir. 2013)(citing *United States v. Cavera*, 550 F.3d

180, 188 (2d Cir. 2008); *see also United States v. Rigas*, 490 F.3d 208, 238 (2d Cir.

2007) (summarizing the abuse-of-discretion standard)). In determining whether

there was an abuse of discretion, an appellate court may "consider whether a factor

relied on by a sentencing court can bear the weight assigned to it … under the

totality of circumstances in the case." *United States v. Rigas*, 583 F.3d 108, 122

(2d Cir. 2009) (quoting *Cavera*, 550 F.3d at 191 (citations omitted) (internal

quotation marks omitted). While the review is "particularly deferential," appellate

courts may set aside sentences as substantially unreasonable when they are so

"'shockingly high' … that allowing them to stand would 'damage the

administration of justice.'" *United States v. Broxmeyer*, 699 F.3d 265, 278 (2d Cir.

2012) (citing *Cavera*, 550 F.3d at 188 & n. 5) (internal quotation marks omitted);

*United States v. Aldeen*, 792 F.3d 247, 255 (2d Cir. 2015) (as amended July 22,

2015) (quoting *Rigas*, 583 F.3d at 123).

### 1. Mr. Ulbricht's Life Sentence is Shockingly High

Here the Court may set aside Mr. Ulbricht's sentence because a life sentence

without the possibility of parole for a first time non-violent drug offense shocks the

conscience. As discussed above, life terms for drug trafficking convictions are

exceptionally rare. Defendants are typically sentenced to much shorter prison

terms. Even when life sentences are within the sentencing guidelines, most federal

defendants are sentenced to a lower term within the guidelines range. Because Mr.

Ulbricht was sentenced to the maximum term under the guidelines and his life term

is much harsher than that of a typical federal drug trafficking sentence, Mr.

Ulbricht's sentence is far outside the norm and shocks the conscience.

### 2. The district court improperly considered general deterrence theory when making its sentencing decision

Mr. Ulbricht's life sentence is substantially unreasonable, in part, because

the district court erroneously relied on general deterrence theory when sentencing

Mr. Ulbricht. A1532-33.

Deterrence theory is defined as the rational choice a person makes when

choosing to obey or violate a law by calculating the potential risks and rewards.[33]

Generally deterrence is the idea that a punishment is communicated to the public in

order to discourage the conduct across society.[34] Subscribers to this theory believe

---

[33] *The Growth of Incarceration in the United States: Exploring Causes and Consequences* 132 (Jeremy Travis et al. eds., 2014); Ray Paternoster & Ronet Bachman, "Perceptual Deterrence Theory," *The Oxford Handbook of Criminological Theory* 649 (Francis T. Cullen & Pamela Wilcox eds., 2013); Ronald L. Akers, *Rational Choice, Deterrence, and Social Learning Theory in Criminology: The Path Not Taken*, 81 J. Crim. L. and Criminology 653 (1990-1991), *available at*
http://scholarlycommons.law.northwestern.edu/cgi/viewcontent.cgi?article=6670&context=jclc;
Ihekwoaba D. Onwudiwe, Jonathan Odo, & Emmanuel C. Onyeozili, *Deterrence Theory*, 1 Encyclopedia of Prisons and Correctional Facilities 233 (2005), *available at*
https://marisluste.files.wordpress.com/2010/11/deterrence-theory.pdf.
[34] Kevin C. Kennedy, *A Critical Appraisal of Criminal Deterrence Theory*, 88 Dick. L. Rev. 4 (1983-1984), *available at*
http://digitalcommons.law.msu.edu/cgi/viewcontent.cgi?article=1036&context=facpubs.

that harsh sentences deter future crime. Yet, it is well established that

incarceration, particularly a severe sentence like life in prison, is an ineffective

criminal deterrent.[35]

> a. The war on drugs has failed to deter drug use or other drug
> activity

Presumably, the intent of punishing people who supply drugs with

incredibly harsh sentences, typically reserved for persons convicted of murder or

manslaughter, is to deter other people from also supplying drugs that could lead to

drug use or to an overdose. But it is widely accepted, both in the general

population as well as the academic and scientific communities, that increased

arrests or increased severity of criminal punishment for drug-related offenses do

not, in fact, result in less use (demand) or sales (supply).[36]

---

[35] *See, e.g.*, *The Growth of Incarceration in the United States: Exploring Causes and Consequences*, 132-40 (Jeremy Travis et al. eds., 2014); Daniel S. Nagin, *Criminal Deterrence Research at the Outset of the Twenty-First Century*, 43 Crime & Just. 1 (1998); Paul Gendreau, Claire Goggin, & Francis T. Cullen, *The Effects of Prison Sentences on Recidivism*, Office of the Solicitor General of Canada (1999); Valerie Wright, *Deterrence in Criminal Justice, Evaluating Certainty vs. Severity of Punishment*, The Sentencing Project (Nov. 2010), *available at* http://www.sentencingproject.org/doc/Deterrence%20Briefing%20.pdf.

[36] *See, e.g.*, Donald Green & Daniel Winik, *Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism Among Drug Offenders*, 48(2) Criminology 357, 357–387 (May 2010) (study found that variations in prison and probation time have no detectable effect on rates of re-arrest and suggests that, at least among those facing drug-related charges, incarceration and supervision seem not to deter subsequent criminal behavior); Samuel R. Friedman et al., *Drug Arrests and Injection Drug Deterrence*, 101(2) Am. J. Pub. Health 344, 347 (2011) ("Changes in hard drug arrest rates did not predict changes in [injection drug use] population rates. These results are inconsistent with criminal deterrence theory and raise questions about whether arresting people for hard drug use contributes to public health.").

For over forty years the failed war on drugs has demonstrated that draconian sentences do not deter drug law violations. Since Richard Nixon declared the war on drugs in 1971, millions of people have been imprisoned. From the time the war on drugs was at its height, in the 1980s and 1990s, the rate of incarceration in the United States has increased over 400 percent.[37] Currently, the United States has the highest incarceration rate of any developed country in the world.[38] And, despite having only 5 percent of the world's population, the United States houses 25 percent of people in the world who are imprisoned.[39]

These dramatic incarceration rates have given many social science researchers the opportunity to evaluate whether imprisonment effectively deters criminal activities. Research has consistently shown that incarceration, especially lengthy sentences, does not deter crime. Since the early 1980s, the United States has experienced dramatic increases in the number and duration of prison terms for drug offenses,[40] yet drug use has not declined. Drug use rates in the United States

---

[37] Oliver Roeder et al., *What Caused the Crime Decline?*, Brennan Center for Justice at NYU School of Law (2015) at 15, *available at* http://www.brennancenter.org/sites/default/files/publications/What_Caused_The_Crime_Decline .pdf; Dep't of Just., Office of Just. Programs, Bureau of Just. Stat., NCJ 236096, *Prisoners in 2010* (Dec. 2011, rev. 2/9/12), *available at* http://www.bjs.gov/content/pub/pdf/p10.pdf; https://www.fas.org/sgp/crs/misc/R41177.pdf.
[38] Oliver Roeder, *The Imprisoner's Dilemma*, Politics (Feb. 12, 2015, 12:01 AM), http://fivethirtyeight.com/features/the-imprisoners-dilemma/.
[39] *Id.*
[40] *The Growth of Incarceration in the United States: Exploring Causes and Consequences* 132, 47-48 (Jeremy Travis et al. eds., 2014); *Fact Sheet: Trends in U.S. Corrections*, The Sentencing Project (2015), *available at* http://sentencingproject.org/doc/publications/inc_Trends_in_Corrections_Fact_sheet.pdf; U.S.

have steadily remained among the highest in the world.[41] The criminalization and incarceration policies which comprise "the war on drugs" – which has sent millions of people to jail and prison for many years for drug offenses – have failed to deter illicit drug-related activities within the country.

      b. <u>Longer sentences are no more effective at deterring crime than shorter ones</u>

Even if there is a slight deterrent effect to incarceration, studies show that any potential benefit would be met by a shorter sentence and that harsher sentences, including life terms, are no more effective at deterring illegal activities.[42] Certainty, rather than severity, is a stronger deterrent to criminal behavior.[43] Meaning that a near guarantee that one will be punished for a criminal activity, even if only for a couple of days, is more likely to deter crime than the

---

Dep't of Just., Office of Just. Programs, Bureau of Just. Stat., Prisoners Series Statistical Tables, *available at* http://www.bjs.gov/index.cfm?ty=pbse&sid=40.

[41] *Drug Use in America vs. Europe in 10 Maps* (2015), http://recoverybrands.com/drugs-in-america-vs-europe/; Eduardo Porter, *Numbers Tell of Failure in Drug War*, N.Y. Times, July 3, 2012, *available at* http://www.nytimes.com/2012/07/04/business/in-rethinking-the-war-on-drugs-start-with-the-numbers.html?_r=0; Serena Dai, *A Chart That Says the War on Drugs Isn't Working*, The Wire (Oct. 12, 2012), *available at* http://www.thewire.com/national/2012/10/chart-says-war-drugs-isnt-working/57913/.

[42] *See, e.g.*, Ihekwoaba D. Onwudiwe, Jonathan Odo, & Emmanuel C. Onyeozili, *Deterrence Theory*, 1 Encyclopedia of Prisons and Correctional Facilities 233 (2005) at 236, *available at* https://marisluste.files.wordpress.com/2010/11/deterrence-theory.pdf.

[43] *See, e.g.*, Angela Hawken & Mark Kleiman, *Managing Drug Involved Probationers with Swift and Certain Sanctions: Evaluating Hawaii's HOPE*, National Institute of Justice 29 (2012) (showing that swiftness and certainty are greater deterrents than the severity of a threatened punishment).

mere threat of a long sentence. A person does not decide to commit a crime because he or she thinks they will receive a sentence of 20 years rather than life.

     c.   <u>Mr. Ulbricht's arrest, conviction, and sentence have failed to deter the creation of Silk Road copycat websites</u>

If Mr. Ulbricht's sentence were an effective general deterrent, then we would not have seen Silk Road copycat websites. Yet, a recent article published February 1, 2016, estimates that there are thousands of Silk Road-like darknet websites, several hundred of which facilitate the sale of illicit drugs.[44] Dozens of these darknet websites were created as Silk Road copycats, such as Evo, Silk Road 2.0, and Silk Road 3.0.[45]

Mr. Ulbricht's life sentence has not deterred activity similar to that for which he was convicted. Because draconian sentences do not – and his sentence in particular will not – deter others from committing similar crimes, the district court improperly considered general deterrence when making its sentencing determination.

---

[44] Daniel Moore & Thomas Rid, "Cryptopolitik and the Darknet," 58(1) *Survival* 7-38 (2016), *available at* http://dx.doi.org/10.1080/00396338.2016.1142085.

[45] *See, e.g.,* Cyrus Farivar, *Copycat site mourns Silk Road verdict, blames Ulbricht's bad opsec*, ars technica (Feb. 5, 2015, 10:33AM), http://arstechnica.com/tech-policy/2015/02/copycat-site-mourns-silk-road-verdict-blames-ulbrichts-bad-opsec/; Joseph Cox, *Dark Web Drug Markets Are Desperately Clinging to the Silk Road Brand*, Motherboard (Oct. 22, 2015, 8:30 AM), http://motherboard.vice.com/read/dark-web-drug-markets-are-desperately-clinging-to-the-silk-road-brand; *University Helped FBI Take Down Silk Road 2.0* (2014), http://silkroaddrugs.org/university-helped-fbi-take-down-silk-road-2-0/; Giulio Prisco, *Good-bye Silk Road 2.0, Welcome Silk Road 3.0* (Aug. 11, 2014), https://www.cryptocoinsnews.com/good-bye-silk-road-2-0-welcome-silk-road-3-0/.

## CONCLUSION

For the reasons stated above Mr. Ulbricht's sentence should be vacated and his case remanded to a new judge for resentencing.

Dated: March 16, 2016

Respectfully submitted,

By:   s/Tamar Todd

Tamar Todd
Jolene Forman
Drug Policy Alliance,
Office of Legal Affairs
*Attorneys for Amici Curiae*
1330 Broadway, Suite 1426
Oakland, California 94612
510-679-2314
510-679-2316
ttodd@drugpolicy.org
jforman@drugpolicy.org

## CERTIFICATE OF SERVICE

I hereby certify that on this date a copy of the foregoing was filed electronically with the Court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

Dated:  March 16, 2016

_____s/Tamar Todd_____
Tamar Todd

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I hereby certify that this brief complies with the type-volume limitations of Fed. R. App. P. 29(d) and 32(a) because it was produced using Times New Roman typeface in 14-point font and contains 5300 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii), according to the word processing system I utilized.

Dated:  March 16, 2016

_____s/Tamar Todd_____
Tamar Todd